IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVIE W. SWOPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14-CV-0152-DGK-SSA |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Davie Swope's applications for Social Security benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of chronic obstructive pulmonary disease ("COPD"), depression/anxiety, hypertension, and obesity, but retained the residual functional capacity ("RFC") to perform light work with several restrictions.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his applications on November 29, 2010, alleging a disability onset date of November 21, 2010. The Commissioner denied the applications at the initial claim level, and

Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on October 12, 2012, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on January 3, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

**Discussion**

Plaintiff argues the ALJ erred at step four in the sequential evaluation process because his credibility determination and his RFC determination are not supported by substantial evidence. Plaintiff also contends the ALJ erred at step five by finding that Plaintiff could perform other work. These arguments are without merit.

**A.     The ALJ did not err in analyzing Plaintiff's credibility.**

Plaintiff argues the ALJ's credibility analysis is unsupported by substantial evidence on the record as a whole. Plaintiff suggests the ALJ's credibility determination is based on an inaccurate perception that he did not have a good or consistent work history. He also contends the ALJ erred in discounting his credibility because he failed to stop smoking quickly.

When the ALJ discounts a claimant's credibility, he is required to explain why he did not fully credit the claimant's complaints. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

With respect to Plaintiff's first argument, the ALJ wrote:

> The claimant has posted earnings for many years. However, his earnings have generally been pretty low. *The undersigned finds that the claimant's work history provides some support for his claim that he is unable to work*, but finds that the other factors the undersigned must consider outweighs the probative value of the claimant's work history.

R. at 21 (emphasis added).

Plaintiff complains that the ALJ found him less credible because his earnings were "pretty low." Plaintiff contends that finding him less credible for this reason is unfair because the record shows that in the previous ten years he worked for the same school district as a janitor making between $18,072 and $30,329 a year, about $8.69 and $14.59 per hour respectively. Plaintiff contends he has a good work history, albeit in a job that did not pay high wages, and that this fact should add to his credibility, not detract from it.

Plaintiff's argument, however, is somewhat misleading. While the ALJ described Plaintiff's earnings as "pretty low," he also recognized that Plaintiff's work history ultimately *supported* his claim that he was unable to work. What detracted from Plaintiff's credibility were the other factors the ALJ discussed in the preceding paragraphs, factors Plaintiff does not dispute. R. at 20-21. Hence, the ALJ's discussion of the relevant credibility factors was, on the whole, reasonable and well-balanced, and there is no error.

With respect to Plaintiff's smoking, Plaintiff contends the record shows he continually attempted to stop smoking, gradually reducing his smoking from three packs a day, to one pack, to stopping altogether. He also argues that failure to stop smoking does not mean his subjective complaints are not credible.

As Defendant notes, however, the ALJ did not deny benefits because Plaintiff failed to follow treatment; rather, he considered Plaintiff's continued smoking as one of many factors affecting his credibility, which is permissible. R. at 20-21. A claimant's failure to follow a recommended course of treatment weighs against a claimant's credibility. *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001). Mary Wurtz, M.D., warned Plaintiff that his smoking exacerbated his COPD. R. at 402-03. Thus, it was reasonable for the ALJ to conclude that if Plaintiff's symptoms were as severe as he alleged, he would have made more of an effort to quit.

Beyond this reason, the ALJ gave another permissible reason to discount Plaintiff's credibility. The ALJ recited a long list of test results and doctors' observations that Plaintiff's COPD was only "mild to moderate," evidence which is inconsistent with Plaintiff's claim that his breathing problems were so bad that they prevented him from working. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility). Because the ALJ gave good reasons for discounting Plaintiff's credibility, the Court should defer to it. *Gregg*, 354 F.3d at 713.

**B.     The ALJ did not err in determining Plaintiff's RFC.**

Next, Plaintiff challenges the RFC determination. A claimant's RFC is based on the combined effects of all of his *credible* limitations. 20 C.F.R. § 416.945. In determining a claimant's RFC, the ALJ may consider a host of factors, including the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and attempts to work. SSR 96-8p. It is the claimant's burden to prove his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

The ALJ found Plaintiff's statements concerning the limiting effects of his impairments were not credible to the extent he indicated these impairments prevented him from performing any work. R. at 20-22. Instead, the ALJ found Plaintiff possessed the ability:

> to perform light work . . . except that he can only occasionally climb, balance, stoop, kneel, crouch or crawl and he can never climb ladders, ropes or scaffolds. He can have no concentrated exposure to temperature extremes, vibration or work hazards and no more than moderate exposure to pulmonary irritants such as fumes, dust, odors, gases or high humidity. He can only occasionally reach overhead bilaterally and he can have no contact with the public. He should only perform simple, unskilled work.

5

R. at 19.

Plaintiff makes four specific challenges to this RFC: (1) there is no medical opinion evidence supporting the RFC; (2) he failed to develop the record; and (3) he failed to assess Plaintiff's RFC on a function-by-function basis; and (4) he assessed the exertional level first, before assessing his functional limitations. These arguments are meritless.

First, as the Court has previously noted, "'[t]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.'" *Brown v. Colvin*, No. 3:12-5042-DGK-SSA, 2013 WL 2250234, at *3 (W.D. Mo. May 22, 2013) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

Second, the ALJ did not err by not ordering a consultative examination. It is the Plaintiff's burden to prove his RFC. *Eichelberger*, 390 F.3d at 591. If Plaintiff believed additional medical evidence, such as the results of his previous electromyogram[2] testing of his hands, bolstered his applications, he should have provided the test results to the ALJ. It is not the ALJ's fault that Plaintiff's counsel failed to do so. In fact, during the hearing the ALJ announced that he would leave the administrative record open for an additional thirty days so that Plaintiff could submit these results. R. at 49. The ALJ had no independent duty to order additional testing here. The ALJ has a duty to develop the record only when a crucial issue is undeveloped and the evidence is insufficient to allow the ALJ to form an opinion. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Here, the ALJ was not confused by the evidence, nor did he lack sufficient evidence to make an RFC determination. Hence, there was no need to order consultative examination.

---

[2] An electromyogram, or EMG, is a diagnostic test that renders a graphic representation of the electric currents associated with muscular action. PDR Medical Dictionary 553 (1st ed. 1995).

6

Third, the ALJ did not err in failing to assess Plaintiff's RFC on a function-by-function basis. This is not a case where the ALJ simply described the claimant's RFC in general terms and failed to provide any analysis. The ALJ began his RFC discussion by stating his conclusion that Plaintiff was limited to light work with certain limitations, and then he described these limitations in detail. This discussion was thorough and covered each of Plaintiff's impairments. This is sufficient. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (rejecting claimant's argument that the ALJ erred by failing to make explicit findings regarding the claimant's ability to stoop, stand, walk, handle, and reach, observing that "[w]e review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation").

Fourth and finally, the ALJ did not err by announcing his conclusion concerning Plaintiff's exertional level first, before discussing each individual limitation. This argument is merely a critique of the ALJ's writing style. The fact that the ALJ stated his conclusion at the beginning of the paragraph instead of at the end is irrelevant. It is certainly not an error.

**C.    The ALJ did not err in finding that Plaintiff could perform other work.**

Finally, Plaintiff argues that the ALJ erred in relying on the vocational expert's ("VE") testimony that he could perform several other jobs, namely as a merchandise marker, nut and bolt assembler, or inspector handpackager. Plaintiff contends the ALJ erred by asking the VE a hypothetical that did not include all of his credible limitations, and that the VE's answer was inconsistent with the Dictionary of Occupational Titles ("DOT").

As a threshold matter, the Court finds nothing wrong with the ALJ's hypothetical. The ALJ posed a hypothetical question to the VE that assumed the claimant lacked any limitations regarding "fingering or gross handling." R. at 60-61. The record does not indicate that Plaintiff suffered limitations in fingering or handling due to carpal tunnel syndrome, so the question

7

relayed all of Plaintiff's credible limitations. Consequently, the VE's answer identifying the above jobs constitutes substantial evidence supporting the ALJ's decision that Plaintiff could perform other work. *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) ("Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence.").

Furthermore, the VE's answer was not inconsistent with the DOT. Although the ALJ found Plaintiff could only occasionally reach overhead, and Plaintiff contends the jobs identified by the VE require *frequent* reaching overhead, there is no error because the VE's testimony was based not only on the DOT but also on her field vocational experience. R. at 61. Testimony from a VE based on field vocational experience can be a reliable source of information that provides better, more specific information than the DOT about how jobs or occupations are actually performed. SSR 00-4P. If such testimony conflicts, or appears to conflict, with information in the DOT, then the ALJ should ask the VE on the record whether there is any inconsistency between the VE's opinion and the DOT, and if so, determine whether the VE's testimony is reasonable and more reliable than the information in the DOT. *Id.* Here the ALJ told the VE at the outset of her testimony that "if you get an opinion which conflicts with the information in the [DOT] . . . you'll need to advise me of the conflict and the basis for your opinion." R. at 55. During the hearing, the ALJ asked the VE twice if her testimony complied with the DOT. R. at 59, 61. Each time, the VE stated that it did. R. at 59, 61. Consequently, the Court finds there is no actual conflict between the two sources. There is certainly no reversible error here. *See* SSR 00-04; *see also Welsh v. Colvin*, 765 F.3d 926, 926 (8th Cir. 2014) (holding the ALJ complied with SSR 00-4p in posing a hypothetical that accurately reflected the RFC by including a limitation on overhead reaching and asking the VE about any possible conflict with the DOT).

8
Case 4:14-cv-00152-DGK   Document 15   Filed 04/07/15   Page 8 of 9

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     April 7, 2015                              /s/ Greg Kays
                                                     GREG KAYS, CHIEF JUDGE
                                                     UNITED STATES DISTRICT COURT